UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jason S. Uselton,　　　　　　　　　　　　　　Case No. 3:13-cv-00349

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION &
　　　　　　　　　　　　　　　　　　　　　　ORDER

CSX Transportation, Inc.,

　　　　　Defendant

## I.　INTRODUCTION

Defendant CSX Transportation, Inc., ("CSXT") has filed a motion for judgment on the pleadings or, alternatively, for summary judgment, on the claims set forth in Plaintiff Jason Uselton's Complaint. (Doc. No. 22). Uselton has filed a brief in opposition to CSXT's motion. (Doc. No. 33). CSXT filed a brief in reply. (Doc. No. 36). For the reasons set forth below, CSXT's motion for judgment on the pleadings is denied and its motion for summary judgment is granted.

## II.　BACKGROUND

Uselton began working for CSXT in August 2002. He held several positions in CSXT's signal department, helping as part of a team to build, and later as an individual to maintain, the railroad's signal system. (Doc. No. 23-1 at 30-33, 47). In 2008, Uselton was charged through the disciplinary process with, among other things, conduct unbecoming a CSXT employee, unauthorized absence from a work assignment, and dishonesty, in violation of several CSXT

Operating Rules. (Doc. No. 23-5 at 47). Following a formal investigation, CSXT terminated Uselton's employment. Uselton appealed his termination through his union representative and ultimately had his termination rescinded and converted into a suspension. CSXT mandated Uselton agree to a number of conditions in connection with his reinstatement, including the following: "It is understood that during the three (3) years following the date this letter is signed, any proven reoccurrence of dishonest behavior or other proven serious incidents of a Rule violation will result in immediate dismissal from the service of [CSXT,] without any consideration of leniency." (Doc. No. 23-5 at 48). Uselton signed the reinstatement letter on March 23, 2009, and returned to work shortly thereafter.

On November 8, 2010, CSXT sent Uselton a letter concerning Uselton's absence from work on November 1 and 2, 2010. (Doc. No. 23-5 at 50). This letter stated Uselton had been informed "several times to contact [his] manager prior to being absent" and that his absences were causing a reduction in productivity for his team. (Id.). This letter did not initiate formal disciplinary action. On November 17, 2010, however, CSXT sent Uselton a charge letter, notifying him that he was required to attend a formal investigative hearing on December 6, 2010, concerning allegations he failed to report to work and to properly notify his supervisor on November 8. (Doc. No. 23-6 at 1). The letter charged Uselton with absenteeism and "possible violations of . . . CSXT Operating Rules – General Regulations GR-1 and GR-2." (Id.). GR-1 requires employees to "report for duty at the designated time and place" and prohibits them from "[a]bsent[ing] themselves from duty" or "[a]rrang[ing] for a substitute" "[w]ithout permission from their immediate supervisor." (Doc. No. 23-5 at 31). GR-2, in part, prohibits employees from "[w]illfully neglect[ing] their duty" or making "any false statements." (Doc. No. 23-5 at 31; Doc. No. 23-6 at 15-16). As a result of the December 2010 investigation and hearing, Uselton was found guilty of absenteeism and violating GR-1 and GR-2 and was suspended for five days in mid-January 2011. (Doc. No. 23-7 at 1).

CSXT encourages employees to provide 24 hours of notice prior to taking leave, though the policy was an unwritten one, and Uselton and other employees were able to utilize paid leave even if they did not provide this period of notice prior to their absences. (Doc. No. 23-3 at 6, 9). Employees were expected to call off work no later than the beginning of their shift. (Doc. No. 23-3 at 6). Uselton failed to comply with this requirement on at least two occasions. (Doc. No. 23-7 at 18-19).

Uselton's attendance-related issues continued in 2011. In January, Uselton missed several days to be at the hospital with his father, who underwent an unexpected surgical procedure. In February, Uselton missed work due to car trouble, as well as to attend doctor's appointments and court hearings related to divorce proceedings. By March 3, 2011, Uselton had exhausted his paid-leave allotment of 80 hours of vacation and 2 "safety bonus days." (Doc. No. 23-7 at 18-19). Uselton called off work from March 14 through March 17, 2011, due to complications from an ear infection; this absence was logged as "sick no pay" and required a note from Uselton's doctor before he could return to work. (Doc. No. 23-7 at 18; Doc. No. 23-3 at 1-2).

Uselton did not immediately return to work, however. On March 20, 2011, he contacted a representative with CSXT's Employee Assistance Program (EAP) to seek help for an opiate addiction. The EAP representative instructed Uselton he should not have any contact with CSXT and should not report to work until specifically instructed. (Doc. No. 23-3 at 23). The following day, Uselton received a telephone call from another EAP representative who had arranged for Uselton to enter an inpatient drug rehabilitation program in Virginia. Before Uselton left for Virginia, he contacted his supervisor, Chris Sellers, to inform Sellers he had spoken with someone from the EAP and wouldn't be at work. (Doc. No. 23-8 at 26; Doc. No. 25-1 at 47). Uselton did not report to work with CSXT before he entered the program on March 26, 2011, which he successfully completed on April 28, 2011.

3

On March 24, 2011, Sellers initiated the process of bringing disciplinary charges against Uselton. Sellers indicated Uselton had exhausted his earned vacation and safety bonus time and also missed five days without pay after calling in sick and lost a half day's pay after reporting to work late. (Doc. No. 22-6 at 6). This report generated a CSXT charge letter which notified Uselton that a formal investigation hearing had been set "to determine the facts and place [his] responsibility, if any, in connection with a report received March 21, 2011, that [he had] been absent excessively since January 1, 2011." (Doc. No. 23-8 at 43). Uselton was charged with excessive absenteeism and violation of GR-1. Uselton's hearing took place on May 16, 2011, following his return to service with CSXT. At the hearing, Uselton was assisted by a union representative, questioned Sellers as to the basis of the disciplinary report, and testified on his own behalf. On May 27, 2011, Uselton was terminated for excessive absenteeism and violation of CSXT operating rules. (Doc. No. 23-8 at 55-56). Uselton filed suit after unsuccessfully appealing his termination through the union. (Doc. No. 23-1 at 50, Doc. No. 23-2 at 1).

CSXT's motion asserts Uselton's complaint forces it to "speculate" about the contours of Uselton's claims and fails to provide "fair notice of the factual grounds" for those claims. (Doc. No. 22-1 at 10, 13). These objections, without more, do not entitle CSXT to judgment on the pleadings under Rule 12(c), and appear better suited for a motion for a more definite statement under Rule 12(e). Further, to the extent CSXT's motion attacks the adequacy of the allegations in the complaint, it is necessary to consider the parties' offers of proof in order to reject Uselton's allegations. Therefore, the portion of CSXT's motion that seeks judgment on the pleadings is denied.

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

4

The movant may meet its burden by showing there is an absence of evidence to support an element of a claim on which the non-movant has the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has satisfied its burden, the non-movant then must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable inferences from the evidence must be drawn in the non-movant's favor. *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. ANALYSIS

Uselton asserts CSXT interfered with and retaliated against him for his use of FMLA leave, discriminated against him on the basis of disability, and failed to provide Uselton with a reasonable accommodation.

### A. FMLA

The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided in the Act. 29 U.S.C. § 2615(a)(1). The FMLA also makes it unlawful for an employer to retaliate against an employee for using FMLA leave. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012); *see* 29 U.S.C. § 2615(a)(2).

A plaintiff may establish a claim for violation of the FMLA either through direct or indirect evidence. Direct evidence requires a finder of fact to conclude impermissible discrimination at least was a motivating factor in an adverse employment action, and does not require the factfinder to draw any inferences before reaching that conclusion. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.

2004).  If the employee presents direct evidence of an improper motive, the employer then bears the burden of proving "it would have made the same decision absent the impermissible motive."  *Id.* (citation omitted).

To establish a prima facie case of FMLA interference, Uselton must demonstrate: (1) he was an eligible employee; (2) CSXT was an employer as defined in the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave CSXT notice of his intention to take leave; and (5) CSXT denied Uselton FMLA benefits to which he was entitled.  *Edgar v. Jac Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  An employer is not liable under an interference theory "if the employer has a legitimate reason unrelated to the exercise of the FMLA rights for engaging in the challenged conduct."  *Id.* at 508.

To establish a prima facie case of retaliation, Uselton must show: (1) he was engaged in an activity the FMLA protects; (2) CSXT knew he was exercising his FMLA rights; (3) CSXT took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).  Unlike the interference theory, here CSXT's motive is relevant "because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508) (emphasis in original).

Uselton first asserts there is direct evidence to support his FMLA claims.  Uselton claims (1) CSXT's absenteeism policy violates the FMLA because it "predisposes its managers and supervisors to discriminate against employees" and (2) CSXT impermissibly considered FMLA-protected absences in terminating Uselton.  (Doc. No. 33 at 11-13).  Uselton's first claim falls flat, as he fails to identify any CSXT policy language which could be construed as permitting CSXT management to

6

discipline an employee who exercised his rights under the FMLA. Uselton's second claim is more persuasive, as Ray Sipes, the assistant chief engineer who signed Uselton's termination letter, admitted that the frequency with which Uselton missed work between January 1, 2011, and May 28, 2011 – a time period which included the inpatient rehabilitation program – was a motivating factor in his recommendation that Uselton be terminated. (Doc. No. 26-1 at 26-27). Uselton also asserts he has established a prima facie case to support both his interference and retaliation claims.

CSXT asserts that, under any of these theories, Uselton fails to identify sufficient direct or indirect evidence to support his claims and further that Uselton may not prevail on his FMLA claims because he never requested FMLA leave and failed to provide CSXT with sufficient notice of his need or desire to take FMLA leave before departing for the inpatient program. While Uselton concedes he did not submit FMLA paperwork prior to or following his absence, he contends the EAP representative instructed him not to tell his supervisors that he was going to enter inpatient drug rehabilitation and that he notified Sellers he had spoken with EAP and would not be at work. (*See also* Doc. No. 25-1 at 47) (Uselton informed Sellers he had contacted an EAP counselor).

An employee need not specifically request FMLA leave in order to invoke the statute's protections, and has given his employer "sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in FMLA . . . has occurred." *Wallace v. FedEx Corp.*, --- F.3d ---, 2014 WL 4116484, at *11 (6th Cir. Aug. 22, 2014) (quoting *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723-24 (6th Cir. 2003)). As CSXT notes, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013). The FMLA regulations associate "unusual circumstances" with communication issues such as the employee's inability to reach a supervisor or designated employee.

7

29 C.F.R. § 825.302(d). There is no evidence that Uselton was unable to request FMLA leave due to physical incapacitation or technological issues outside of his control. On the other hand, at the time Uselton should have sought leave under CSXT's policy, he already had received countervailing instructions from the EAP. That program promises employees who utilize its services that an employee's need for and use of the EAP's assistance will be kept confidential. While CSXT reasonably requires notice prior to an employee's use of FMLA leave in order to ensure its operations are staffed sufficiently, a reasonable juror might conclude the EAP's instructions effectively mitigated Uselton's failure to provide CSXT with notice.

Even if I assume the unusual factual circumstances of this case satisfy Uselton's burden of proof, CSXT still may be entitled to summary judgment if it can show it would have terminated Uselton regardless of his use of FMLA–protected leave. *DiCarlo*, 358 F.3d at 415; *Edgar*, 443 F.3d at 507; *Seeger*, 681 F.3d at 282. Uselton suggests the evidence he identified to establish his rehabilitation-related absences as a motivating factor in his termination also creates a question of fact concerning whether CSXT has proven it had a nondiscriminatory reason for firing him. (Doc. No. 33 at 15-16).

There is no dispute that Uselton did not seek or qualify for FMLA leave on any of the dates on which he was absent from work between January 1, 2011, and March 21, 2011. These absences formed the basis for the disciplinary proceedings initiated against Uselton prior to his entrance into the Virginia inpatient program. Uselton's termination letter clearly stated that the evidence and testimony presented during Uselton's hearing "prove[d] and substantiated" the charges of excessive absenteeism and violation of GR-1. (Doc. No. 23-7 at 55). Further, Uselton also was on notice he could be terminated for "proven serious incidents of a Rule violation." (Doc. No. 23-5 at 48). Uselton fails to identify a genuine dispute of material fact regarding whether CSXT had a legitimate reason to terminate his employment unrelated to his FMLA-protected treatment. *See Wallace,* 2014

8

WL 4116484, at *15 ("[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave"(quoting *Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003))); *Seeger*, 681 F.3d at 284 (employee may not prevail on FMLA retaliation claim if the employee was terminated for a reason unrelated to the FMLA). CSXT is entitled to summary judgment on Uselton's FMLA claims.

### B. DISABILITY DISCRIMINATION

An employer may not "discharge without just cause" or otherwise discriminate against an employee "because of" that employee's disability. Ohio Rev. Code § 4112.02(A). A person is disabled if the person (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of a physical or mental impairment; or (3) is regarded as having a physical or mental impairment. Ohio Rev. Code § 4112.01(A)(13). An employee may establish a prima facie case of disability discrimination by showing (1) he was handicapped or his employer regarded him as handicapped; (2) his employer took an adverse employment action against him at least in part because he was handicapped; and (3) he "though handicapped, can safely and substantially perform the essential functions of the job in question." *Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998); *Yamamoto v. Midwest Screw Prod.*, 2002-Ohio-3362, 2002 WL 1400106 at *4 (Ct. App. June 28, 2002) (quoting *Markham v. Earle M. Jorgensen Co.*, 741 N.E.2d 618, 630 (Ohio Ct. App. 2000) (concurring opinion)).

Under Ohio law, an employee's drug addiction "falls within the ambit of R.C. 4112.01(A)(13)." *Hazlett v. Martin Chevrolet, Inc.*, 496 N.E.2d 478, 479 (Ohio 1986). While an employer may terminate an employee based on the illegal use of any controlled substance, the employee retains the protection of Ohio antidiscrimination law if the employee "has successfully

9

completed a supervised drug rehabilitation program and no longer is engaged in the illegal use of any controlled substance . . . ." Ohio Rev. Code § 4112.02(Q)(1)(a)-(b).

Uselton contends his supervisors at CSXT impermissibly regarded him as disabled because they "clearly regard[ed] a person who has completed drug rehabilitation as incapable of showing up for work." (Doc. No. 33 at 18). It is evident, however, that an employer can require regular attendance at the workplace from its employees. *See, e.g., Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). Moreover, an employee's ability <u>to come to work</u> is different than the employee's ability <u>to work</u>. *See Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 322 (6th Cir. 2012) ("Being absent from work is not a disability."). Even without consideration of the days on which Uselton did not report to work because he was attending the inpatient drug rehabilitation program, there is no genuine dispute as to whether Uselton's workplace attendance was reliable, as he repeatedly missed work between January 1 and March 20, 2011. Uselton did not attribute any of these absences to his substance addiction, and identifies no evidence that anyone at CSXT did so either.

CSXT is entitled to summary judgment on Uselton's disability discrimination claim. Under Ohio law, an employer may discharge an employee for excessive absenteeism, even if that absenteeism results from substance abuse issues, "so long as the same neutral criteria are applied to handicapped and nonhandicapped persons alike." *Cleveland Civil Serv. Comm'n v. Ohio Civ. Rights Comm'n*, 565 N.E.2d 579, 583 (Ohio 1991); *see also Hayes v. Cleveland Pneumatic Co.*, 634 N.E.2d 228, 232 (Ohio Ct. App. 1993) (citing *Harris v. Ohio Bur. of Emp't Serv.*, 553 N.E.2d 1350 (Ohio 1990)). While he broadly asserts CSXT's absenteeism policy is "overly broad and inherently discriminatory," Uselton offers no evidence that CSXT treated other employees with workplace attendance issues any differently. (Doc. No. 33 at 6).

CSXT also is entitled to summary judgment on Uselton's disability accommodation claim. The plaintiff has the burden of proving both that he proposed an accommodation that the employer denied and that the proposed accommodation was reasonable. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Uselton did not request an accommodation to CSXT's attendance requirement at any time. (Doc. No. 23-4 at 5). CSXT was not required to ignore Uselton's absenteeism and rule violations prior to his inpatient treatment simply because he later informed the company that he attended a rehabilitation program for substance addiction.

## V. CONCLUSION

For the reasons stated above, CSXT's motion for summary judgment is granted. The portion of CSXT's motion that seeks judgment on the pleadings is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge